THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAISER SAID ELMI, et al.,

    Plaintiffs,

    v.

SSA MARINE, INC., a Washington corporation, et al.,

    Defendants.

CASE NO. C13-1703-JCC

ORDER

This matter comes before the Court on the motion for summary judgment of Defendants Port of Seattle, Jack Myers, Jose Santiago, Terrence Kwan, and Walter Wesson. (Dkt. No. 21.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.    **BACKGROUND**

Plaintiffs, four short haul truck drivers at the Port of Seattle of East African birth and descent, sue SSA Marine and several of its employees ("SSA Marine Defendants"), as well as the "Port of Seattle Defendants,"[1] who filed this motion. Plaintiffs deliver goods to Terminal 30,

---

[1] The Port of Seattle Defendants include the Port of Seattle itself, as well as Jack Myers, Jose Santiago, Terrence Kwan, and Walter Wesson. Each of the individual Port of Seattle Defendants is an officer with the Port of Seattle Police Department. (*See* Dkt. No. 1 at 4–6, ¶¶ 2.9–2.13.)

ORDER
PAGE - 1

a marine terminal owned by the Port of Seattle and operated by SSA Marine. Plaintiffs' claims against the Port of Seattle Defendants are premised two arguments: first, that, after Plaintiffs reported assaults by the SSA Marine Defendants[2] in Terminal 30, the Port of Seattle Defendants, in their capacity as Port of Seattle Police Officers, erred in failing to arrest the assailants; and second, that some of the Port of Seattle Defendants forced some of the Plaintiffs to leave the area after the alleged assault.[3]

Plaintiff Elmi alleges that he was assaulted and threatened by an SSA Marine employee, and that the Port of Seattle Defendants failed to arrest the assailant. (Dkt. No. 1 at 12–13, ¶¶ 3.11–3.16.) Additionally, certain Port of Seattle Defendants "ordered ELMI to leave . . . which ELIMI [sic], having no choice, did." (Dkt. No. 1 at 12, ¶ 3.15.) Plaintiff Berhane alleges that he, too, was assaulted by one of the SSA Marine Defendants. (Dkt. No. 1 at 13–14, ¶¶ 3.17–3.21.) Certain of the Port of Seattle Defendants arrived in response to Mr. Berhane's report, and failed to arrest the alleged person who committed the assault. (Dkt. No. 1 at 13, ¶ 3.2.) The assailant was eventually charged with misdemeanor assault. (Dkt. No. 1 at 14, ¶ 3.21.) Plaintiff Muhiddin alleges that he was assaulted by the same individual who assaulted Berhane. (Dkt. No. 1 at 14–15, ¶¶ 3.24–3.37.) After the assault was reported, Defendant Port of Seattle Officers "coerced MUHIDDIN to leave the terminal . . . without letting him drop off the container on his truck." (Dkt. No. 1 at 15, ¶ 3.33.) The Defendant Port of Seattle Officers did cite the assaulting individual "for a second time, resulting in criminal prosecutions against him that are ongoing." (Dkt. No. 1 at 15, ¶ 3.36.)

---

[2] The SSA Marine defendants include SSA Marine, Inc., a Washington corporation that contracts to operate ports and marine terminals, and several of its individual employees.

[3] None of the Plaintiffs' claims against the Port of Seattle Defendants arise out of the bathroom policies in place at Terminal 30: as conceded by Plaintiffs, "there is no contention that there is a Port of Seattle Policy of not allowing Plaintiffs and other short-haul truckers to use the restrooms at the terminals." (Dkt. No. 29 at 4.) Accordingly, Plaintiffs are not asserting claims arising out of the Plaintiffs' lack of access to restroom facilities against the Port of Seattle Defendants.

ORDER
PAGE - 2

Plaintiffs Elmi, Berhane, and Muhiddin assert,[4] against the individual Port of Seattle Defendants, a § 1983 claim consisting of the deprivation of Plaintiffs' liberty without due process of law, violations of Plaintiffs' privacy rights, violations of Plaintiffs' equal protection rights, violations of Plaintiffs' right to be free from unreasonable search and seizure, violations of the "right to be free from discriminatory law enforcement," violations of their right to free expression, and violations of their right to the freedom of association. (Dkt. No. 1 at 18–19, ¶¶ 5.1–5.5.) Those same Plaintiffs also assert a § 1983 claim against Port of Seattle, for failure to supervise, train, and discipline defendants as well as ratifying and supervising the individual officers' conduct, under the First, Fourth, Thirteenth and Fourteenth Amendments. (Dkt. No. 1 at 20–21, ¶¶ 5.6–5.9.) Some of the Plaintiffs—though it is not clear which ones, as the Plaintiffs asserting the claim are not specified in the Complaint—assert against defendants a claim of racial and national origin discrimination under RCW 49.60.030, based on the Defendants' actions in creating and enforcing an "arbitrary and unreasonable [policy [sic] as to the restrooms at Terminal 30 that was facially and legally discriminatory." (Dkt. No. 1 at 25, ¶¶ 5.29–5.32.)[5] Similarly, some or all of the Plaintiffs assert against all Defendants claims of intentional infliction of emotional distress, (Dkt. No. 1 at 26, ¶¶ 5.33–5.37), and negligence, (Dkt. No. 1 at 27, ¶¶ 5.38–5.40), premised on the alleged discriminatory acts.

The Court set a status conference for April 8, 2014. However, counsel for Plaintiff did not appear, and the Court reset the status conference. (Dkt. Nos. 19, 20.)

---

[4] The factual basis for Plaintiff Chernet's various claims is that he was assaulted by another employee of SSA Marine. (Dkt. No. 1 at 16, ¶¶ 3.40–3.43.) He alleges that the incident "occurred in from [sic] of a PORT of Seattle [sic] Police Officer who arrested [the individual] and had him charged." (Dkt. No. 1 at 16, ¶ 3.42.) He does not allege that any Port of Seattle Police Officer barred him from Terminal 30, or failed to arrest his attacker, or did anything else that violated his constitutional, statutory, or common law rights. Additionally, Defendants state, and it is not contested by Plaintiffs, that Mr. Chernet has not asserted any claims against Defendants. (Dkt. No. 21 at 4.) Accordingly, Mr. Chernet is proceeding solely against the SSA Marine Defendants.

[5] As noted in Footnote 3, Plaintiff is asserting this claim solely against the SSA Marine defendants.

Later that same day, the Port of Seattle Defendants filed the motion for summary judgment at issue here. (Dkt. No. 21.) In support of their motion, they submitted signed and sworn declarations by officers Myers, Santiago, and Wesson, with attached police reports and investigatory documents. (Dkt. Nos. 22, 23, 24.) Plaintiffs responded, asserting that Defendants' motion is "improper, premature, inapplicable, and should simply be denied or struck." (Dkt. No. 29 at 8.) He submitted no evidence in support of his response. Port of Seattle Defendants replied. (Dkt. No. 30.)

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 56,[6] the Court must enter summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of material fact exists, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Accordingly, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[A] non-movant's failure to respond" to arguments made in a motion for summary judgment does not constitute "a complete abandonment of its opposition to summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

However, "the opposing party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for the purposes of the motion.'" *Id.* (quoting Fed. R. Civ. P. 56(e)(2)). "A party asserting that a fact cannot be or is genuinely disputed must support

---

[6] In their opposition, Plaintiffs cite to the Rule 12(b)(6) dismissal standards, as well as *Iqbal*, *Twombly*, and *Starr v. Baca*, 632 F.3d 1202 (9th Cir. 2011), decisions interpreting that standard. However, that standard is not relevant on a motion for summary judgment.

ORDER
PAGE - 4

the assertion by" citing to particular materials in the record, including depositions, documents, admissions, and other such evidence, or showing that the materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Similarly, the local rules specify that a party opposing a motion must file any evidence it intends to rely upon to support a motion with the Court. W.D. Wash. Local Civ. R. 7(b)(2). However, if a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed, or grant summary judgment to the moving party if the motion and the supporting materials show that the movant is entitled to that remedy. Fed. R. Civ. P. 56(e).

### A. Plaintiffs' Request for Additional Time to Conduct Discovery

Plaintiffs ask for the motion to be denied because discovery has not yet occurred, and so they have not had a chance to find evidence to contest that which was submitted by Defendants. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), the Court may defer considering the motion or deny it. Here, Plaintiffs do not submit a declaration or affidavit stating that additional discovery is necessary in accordance with Rule 56(d), and instead rely solely on unsworn assertions in their unverified memorandum opposing Defendants' motion. "An unsworn memorandum opposing a party's motion for summary judgment is not an affidavit." *Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989). Accordingly, Plaintiffs have not made a proper request for a continuance under Rule 56(d), and the Court will not accept as true the conclusory statements made in an unsworn piece of written advocacy with no supporting evidence.

The Court also notes that the party seeking a Rule 56(d) continuance of a motion for summary judgment bears the burden of proffering facts sufficient to satisfy the requirements of the rule. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). The Court should only grant a Rule 56(d) motion "if the movant diligently pursued its *previous* discovery opportunities, and if the movant can show how allowing *additional* discovery would have

precluded summary judgment." *Qualls By and Through Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). A party may not seek discovery "from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). However, in arranging a Rule 26(f) conference, the parties "must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held." Fed. R. Civ. P. 26(f)(1).

This case was filed in September 2013, approximately eight months ago. Plaintiffs do not submit any evidence in support of their contention that there has been no Rule 26(f) conference, and the Court will not credit unsupported factual assertions in motion papers. Even if they had, however, they have made no showing of diligence: a Rule 16(b) status conference[7] had been previously set for April 8, 2014, and under Rule 26(f)(1), the Rule 26(f) conference should have occurred, *at the very latest*, 21 days before that date. The fact that counsel for Plaintiffs failed to appear the day of the status conference, resulting in yet another continuance, (*see* Dkt. Nos. 19, 20, 26, 27, 28), does not excuse their apparent failure to diligently pursue discovery. Because Plaintiff has not properly supported his assertions with an affidavit or declaration, and because Plaintiff has put forward no showing of diligence, the Court declines to delay consideration of the motion for summary judgment or deny it on the grounds that Plaintiff has been unable to engage in discovery.

Similarly, while a number of motions must contain a certification that the movant has "in good faith conferred or attempted to confer," *see, e.g.*, W.D. Wash. Local Civ. R. 7(d)(4), 37(a)(1), there is no such requirement with respect to motions for summary judgment. To the extent Plaintiff is arguing that Defendants should have conferred before filing their motion for summary judgment, (*see* Dkt. No. 29 at 5), failure to do so is not a basis for denying the motion.

---

[7] Plaintiffs incorrectly state that this motion was filed "on the day of the first scheduled Rule 26 conference." (Dkt. No. 29 at 6.) But it was actually filed on the day of the status conference, and the Rule 26 conference should have occurred no later than 21 days before that date. *See* Fed. R. Civ. P. 26(f)(1).

**B. Defendant's Motion for Summary Judgment**

Plaintiff Elmi alleges, first, that the Port of Seattle police officer responding to Mr. Elmi's report of an assault failed to arrest Mr. Elmi's attacker due to the parties' respective ethnicities; and second, that the same police officer directed Mr. Elmi to leave the area after the alleged assault. (*See* Dkt. No. 29 at 2.) Officer Myers was the officer that investigated Mr. Elmi's report of an assault. In his declaration in support of the motion for summary judgment, Officer Myers states that he interviewed several witnesses and conducted additional investigation, "but was unable to conclude whether an assault took place." (Dkt. No. 22 at 2.) Accordingly, he "did not make an arrest or issue a citation." (*Id.*) Moreover, he explicitly states that he did not order Mr. Elmi to leave Terminal 30. (*Id.*) He also states that he "did not base [his] decisions on the race or national origin of the parties or witnesses." (*Id.*) He attaches investigatory materials to support his declaration. (*See* Dkt. No. 22.) Because Plaintiffs did not submit any evidence to contradict this evidence, the Court finds that the statements of Officer Myers are undisputed.

Mr. Berhane argues that the Port of Seattle Defendants discriminatorily refused to arrest his assailant. He does not allege that the Port of Seattle Defendants barred him from Terminal 30. (*See* Dkt. No. 1 at 13–14, ¶¶ 3.17–3.21.) Port of Seattle Defendants submit the declaration of Officer Wesson, who investigated the alleged assault of Mr. Berhane, to support their motion for summary judgment. (*See* Dkt. No. 24.) Officer Wesson explains what he did after he received the report of the assault, which included including interviewing Mr. Berhane; Mr. Berhane's coworker, a witness to the assault; and the alleged assailant. (Dkt. No. 24 at 3–4.) Officer Wesson also attempted to contact another witness, John Karasucki, several times, but was unsuccessful. (Dkt. No. 24 at 4.) Officer Wesson also took pictures of the injury. (Dkt. No. 24 at 3.) Officer Wesson stated that while he had probable cause to arrest the alleged assailant, he wanted to interview the two remaining witnesses before making a decision to arrest and charge that person. (Dkt. No. 24 at 4.) He states that he did not base his decision on the race or national origin of any of the parties, but instead chose to do additional investigation before arresting the

alleged assailant or issuing him a citation. (*Id.*) He eventually issued a citation to the alleged assailant, who was charged, pleaded guilty, and subsequently withdrew his plea. (*Id.*) Because Plaintiffs did not submit any evidence to contradict this evidence, the Court finds that the statements of Officer Wesson are undisputed.

Plaintiff Muhiddin argues, first, that the officers investigating Mr. Muhiddin's assault allegations failed to arrest Mr. Muhiddin's attacker due to the parties' respective ethnicities; and second, that the officers directed Mr. Muhiddin to leave the area after the alleged assault. (Dkt. No. 1 at 14–15, ¶¶ 3.24–3.34.) Port of Seattle Defendants submit the declaration of Officer Santiago to support their motion for summary judgment. (*See* Dkt. No. 23.) Officer Santiago explains that in investigating the alleged assault, he interviewed Mr. Muhiddin, the alleged assailant, and several other witnesses. (Dkt. No. 23 at 2–4.) At that point, he had probable cause to believe that the assault had occurred. (Dkt. No. 23 at 5.) However, rather than arrest the alleged assailant, he exercised his discretion to issue a criminal citation. (Dkt. No. 23 at 5.) He "did not base this decision on the race of the parties or their national origin." (*Id.*)[8] He states that it "was not his decision whether to eject Mr. Muhiddin [from Terminal 30] or not," but that he did "tell [Mr. Muhiddin] that he would be asked to leave and that he would have to follow the Security guard out." (*Id.*) Because Plaintiffs did not submit any evidence to contradict this evidence, the Court finds that the statements of Officer Santiago are undisputed.

Thus, there is no genuine issue of material fact as to the following facts: 1) none of the officers, at any time, ordered any of the plaintiffs to leave Terminal 30, though an officer did tell Mr. Muhiddin that it was likely that SSA Marine employees would ask him to leave; 2) none of the officers based any of their decisions on the race or national origin of any of the parties or witnesses; 3) to the extent any of the officers failed to immediately arrest or issue a citation to any of the assailants, such a decision was well within their discretion, was not due to the

---

[8] He also notes that his understanding is that the jury acquitted the alleged assailant of the assault. (Dkt. No. 23 at 5.)

consideration of improper factors, and did not involve an abuse of discretion. Effectively, Plaintiffs do not dispute any of the facts that demonstrate that the officers did nothing wrong.[9]

Accordingly, the Court GRANTS summary judgment to all Port of Seattle Defendants, as the claims against them are based on the actions of the officers investigating the assault allegations of Mr. Elmi, Mr. Berhane, or Mr. Muhiddin, and there are no genuine issues of material fact that could show that the Port of Seattle Defendants committed an actionable wrong.

**III.   CONCLUSION**

For the foregoing reasons, Port of Seattle Defendants' motion for summary judgment (Dkt. No. 21) is GRANTED.

DATED this 29th day of May 2014.

*John C. Coughenour*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[9] In the alternative, the Court finds that the officers are entitled to qualified immunity inasmuch as the claims do not arise out of race or national origin discrimination, as Plaintiffs do not point to any clearly established federal law violated by the Port of Seattle Defendants.